UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL STIMSON,

       Plaintiff,    Civil Action No. 17-13458
               Honorable Terrence G. Berg
               Magistrate Judge David R. Grand

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 14]

Plaintiff April Stimson ("Stimson") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Acting Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #13, 14) which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Stimson is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that

1

the Commissioner's Motion for Summary Judgment **(Doc. #14)** be **DENIED**, Stimson's Motion for Summary Judgment **(Doc. #13)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.    REPORT

### A.    Background

Stimson alleges disability as a result of back pain, neck pain, leg pain, two brain aneurisms, epilepsy, migraines, arm pain and muscle spasms, neuropathy in her hands and feet, bladder disease, chronic weakness and fatigue, depression, and anxiety.  (Tr. 180).  In her brief, Stimson asserts:

> [Stimson] suffers from an alarming number of medical conditions, given her relatively young age.  These conditions include: (1) status post cervical fusion at C5-6 in February 2013 for a herniated disc [ ] ; (2) cervical radiculopathy [ ] ; (3) lumbar radiculopathy with left foot drop [ ] ; (4) interstitial cystitis with refractory urgency requiring implantation of stimulator [ ] ; (5) brain aneurysm [ ] ; (6) partial complex epilepsy [ ] ; (7) migraine and muscle contraction headaches [ ]; (8) optic neuritis [ ]; (9) arthralgia in the ankle/foot [ ]; (10) neuropathy [ ]; and (11) depression and anxiety.

(Doc. #13 at 9-10).

At the time of the administrative hearing, Stimson was thirty-five years old. (Tr. 33).  Her highest level of education is eighth grade; she did not receive a GED.

2

(Tr. 33-34). She testified that she left school in the eighth grade because she became pregnant with her son. (Tr. 51). Stimson worked at McDonalds previously, until 2012. (Tr. 35-36). While working at McDonalds in July 2012, Stimson experienced a workplace injury, and could not return to work afterwards (Tr. 330, 334); as a result of that injury, Stimson "suffered a traumatic disc herniation at C5-C6 and underwent a cervical discectomy and fusion in February, 2013." (Tr. 330). Her alleged disability onset date is September 30, 2012. (Tr. 157).

Stimson applied for disability benefits on September 26, 2014, but her application was denied on June 19, 2015. (Tr. 157-59). Stimson then filed a written request for a hearing on July 28, 2015. (Tr. 12). A hearing was held on August 24, 2016, before ALJ John Dodson. (*Id.*). Christopher Deem, counsel for Stimson, appeared with her at the hearing. (Tr. 12). Stimson testified, as did Vocational Expert Michael Rosko. (Tr. 53). Following the hearing, Stimson submitted additional medical evidence, consisting of Dr. Kevin Lee's treatment notes from July and August 2016, which the ALJ indicated were added to the record and reviewed. (Tr. 12). On October 24, 2016, the ALJ issued a written decision finding that Stimson is not disabled under the Act. (Tr. 25). Stimson filed a Request for Review to the Appeals Council, and the Appeals Council denied review on September 18, 2017. (Tr. 1). Stimson then timely filed for judicial review of the final decision on October 24, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Stimson's medical records, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## B.     The ALJ's Application of the Framework for Disability Determinations

Under the Act, DIB benefits are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is

conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Stimson is not disabled under the Act.  At Step One, the ALJ found that Stimson has not engaged in substantial gainful activity since September 30, 2012, the alleged onset date.  (Tr. 14).  Next, the ALJ found that Stimson has the following severe impairments: cervical fusion surgery , depression, anxiety, neuropathy in hands and feet, bladder disease, failed hemorrhoid surgery, epilepsy, asthma, obesity, interstitial cystitis, and migraines.  (Tr. 14).  At Step Three, the ALJ found that Stimson did not have an impairment or combination of impairments that meet or medically equal the severity

of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. (Tr. 15). The ALJ then found that Stimson has the residual functional capacity ("RFC") to perform sedentary work "except with no ropes, ladders, or scaffolds; only occasional remaining postural activities; occasional reaching in front, laterally, and overhead bilaterally, no exposure to hazards or vibration; no use of the lower extremities for operating foot controls; and limited to unskilled work involving 1 to 3 step repetitive tasks with no production-like standards." (Tr. 17).

At Step Four, the ALJ concluded that Stimson is unable to perform any past relevant work. (Tr. 23). At Step Five, the ALJ found that considering Stimson's age, education, work experience, and RFC, she can perform the following jobs that exist in significant numbers in the national economy: sedentary "product finishing" type bench occupations; sedentary assembly work; and sedentary sorting work. (Tr. 25). As a result, the ALJ concluded that Stimson is not disabled under the Act. (*Id.*).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)

(internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, *supra* at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, *supra* at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every

piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

### F.    Analysis

In her summary judgment motion, Stimson argues that the ALJ's decision is not supported by substantial evidence because he improperly rejected Dr. Lee's treating physician opinion, despite extensive, objective medical support, and a lengthy, extensive treatment relationship.  According to Stimson, "Dr. Lee's opinion was based on years of treatment of [Stimson], including surgical procedures and objective medical testing.  Accordingly, it should have been entitled to controlling

weight." (Doc. #13 at 18).  For the reasons set forth below, the Court finds that this argument has merit and that remand is appropriate for that reason.[1]

*1. The ALJ Violated the Treating Physician Rule as to Dr. Lee's Opinion*

Stimson argues that the ALJ violated the treating physician rule when he declined to give Kevin Lee, M.D.'s opinion controlling weight, because "Dr. Lee's opinion was well-supported and consistent throughout his treatment relationship with [Stimson]." (Doc. #13 at 16).  Further, according to Stimson, the ALJ failed to provide "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, [ ] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." (*Id.* at 15) (citing *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)).  As a result, Stimson argues, the ALJ's finding is harmful error of law, and is not supported by substantial evidence.  (*Id.*).  The Court agrees.

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference," but they "are only given such deference when supported by

---

[1] Stimson also argues that the ALJ erred in rejecting the treating physician opinion of Dr. Barber, her primary care physician.  Stimson also filed a supplemental memorandum of law in which she argues that her claim should be remanded for a *de novo* administrative hearing because her hearing was held before an ALJ whose appointment was unconstitutional, citing the two recent cases of *Lucia v. S.E.C.*, 138 S. Ct. 736 (2018) and *Jones Brothers, Inc. v. Secretary of Labor, et al.*, 898 F.3d 669 (6th Cir. 2018).  However, because the Court is recommending remand as to the ALJ's evaluation of Dr. Lee's opinion, it need not address the merits of these other two arguments.

objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) and 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, *supra* at 406 (internal quotations omitted); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, it is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson, supra* at 544 (citing 20 C.F.R. § 404.1527(d)(2) (establishing that the ALJ must "give good reasons" for the weight given to a treating source opinion)). That a treating physician's opinion is inconsistent with the record constitutes a "good reason" for not giving controlling weight to it. *Reynolds v.*

*Comm'r of Soc. Sec.*, 424 F. App'x 411, 417-18 (6th Cir. 2011). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)).

Ultimately, "[t]his procedural 'good reason' rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of his case." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550-51 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 242). "Significantly, the requirement safeguards a reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the [treating physician] rule.'" *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (quoting *Wilson*, *supra* at 544). Because it also "exists to 'ensur[e] that each denied claimant receives fair process,'" the Sixth Circuit has "held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407 (emphasis in original) (quoting *Rogers*, 486 F.3d 243).

11

Dr. Kevin Lee, board certified in neurosurgery, is Stimson's surgeon. He performed multiple surgical procedures on Stimson, including a cervical discectomy and fusion in February 2013, and several other cervical surgeries in the following years. (*E.g.*, Tr. 455-56, 377-78, 389-390, 768, 770). However, Dr. Lee's treatment of Stimson extends beyond performing surgery. He also managed her care, prescribed medications, issued diagnoses, and conducted many follow-up appointments from 2012 through 2016. (*E.g.*, Tr. 386, 387, 326-27, 329, 451, 447-49, 363-66, 375-76, 342, 334). During the four years he treated Stimson, Dr. Lee completed over 130 pages of treatment notes, deta0iling his care, management, and opinions about the causes and progression of Stimson's medical issues.[2] Dr. Lee diagnosed Stimson with many cervical and lumbar conditions, including: lumbago, lumbar disc herniation with lumbosacral radiculopathy bilateral, disc herniation "impinging on the thecal sac with mass effect upon the ventral aspect of the spinal cord," myofascial pain, disc bulging and ligamentum flavum hypertrophy, and a right superior hypophyseal artery aneurysm. (Tr. 333, 773, 435, 340, 342, 344). Dr. Lee also monitored several other issues that he did not personally diagnose, such as Stimson's brain aneurysms, foot issues, and bladder condition, among others. He listed Stimson's symptoms as ongoing neck pain and headaches, arm pain, thoracic

---

[2] Although Dr. Lee filled out a RFC questionnaire that does not include much detail, as discussed herein, his treatment notes include most of the relevant opinions regarding Stimson's physical ailments and limitations.

and lumbar pain, scapular and shoulder pain, foot weakness, muscle spasms, and he opined that these symptoms resulted from, among others, broad-based central disc protrusion, disc disruption, radiculopathy possibly due to nerve root injury and battered nerve syndrome, neuroma, straightening of the normal cervical lordosis, as well as the above-mentioned conditions. (Tr. 323, 333, 368, 771). He also wrote that "[a]ll of [Stimson's] medications make her fall asleep very easily. She will fall asleep either sitting or standing," which suggests implications for her ability to sustain work, including at the sedentary level. (Tr. 770-71).[3]

The ALJ discussed Dr. Lee's opinion below, in full:

> As for the opinion evidence, the claimant's physician, Dr. Lee, repeatedly indicated that she was disabled, unable to perform work activity, and needed to limit her activity level. (e.g., Exhibits 5F, pages 12, 14, 15; 9F, page 20). He felt she was not capable of sustaining 40 hours of work per week. (Exhibit 22F). Dr. Lee was somewhat more specific shortly after the claimant's injury and before her surgery, when he indicated she could not use her arms overhead or lift greater than 10 pounds and needed to limit use of her right arm and hand at work. (Exhibit 5F, page 94). Only some weight is given to these opinions. Dr. Lee's assessments were generally vague, and the only specific limitations he gave were offered shortly after the claimant's injury and prior to her surgery.

---

[3] The ALJ did not specifically address Dr. Lee's opinion that Stimson's medications "make her fall asleep very easily. She will fall asleep either sitting or standing." The ALJ did mention Stimson's medications as follows; "[Stimson] testified she…takes Norco, Neurontin, and Flexeril for her pain, which causes her to be drowsy or fall asleep if she relaxes" (Tr. 18);"[Stimson] showed some deficits in item recall that could be attributed to her combination of mental impairments, medication side effects, fatigue, and distraction from pain" (Tr. 23); and Stimson's admission that, after taking her morning medications, she has forgotten subsequent doses of medication (Tr. 18). As discussed below, on remand, the ALJ should consider specifically Dr. Lee's opinion as to the effects of Stimson's medications. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Moreover, Dr. Lee's clinical notes generally discussed objective medical findings only minimally and he did not offer a clear basis for the degree of limitation he has suggested. Accordingly, only some weight is given to his assessments.

(Tr. 22).

Notably, the ALJ did not assert that Dr. Lee's opinions were inconsistent with the medical record as a whole. Stimson argues, therefore, that "the commissioner summarily dismissed these objective and well-supported medical opinions in favor of his own medical judgment," in violation of the obligation to provide sufficient explanation for any rejection. (*Id*).

Pursuant to SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996), and 20 C.F.R. §§ 404.1527(c) and 416.927(c)'s "good reasons" requirement, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson*, *supra* at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Id*. at 545. "Consistent with this principle, courts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as [§§ 404.1527(c) and 416.927(c)] require[]." *Id*. (internal citations omitted).

14

Here, the ALJ violated §§ 404.1527(c) and 416.927(c) by failing to provide good reasons for giving Dr. Lee's opinions less than controlling weight.  Notably, the ALJ did not meaningfully compare the details of Dr. Lee's voluminous treatment notes with his opinions.  Nor, contrary to the Commissioner's assertion, *see infra* at 23-24, did the ALJ opine that Dr. Lee's notes or opinions are inconsistent with Stimson's medical record as a whole.  Although the ALJ wrote that Dr. Lee's assessments were "generally vague" and "did not offer a clear basis for the degree of limitation he has suggested," the record does not support this.  (Tr. 22).  Dr. Lee frequently explained, in detail, Stimson's medical issues, the causes of her pain, and the basis for his opinions and treatment decisions.  For example, in September 2013, Dr. Lee wrote, "A cervical spine MRI scan performed on September 3, 2013 was viewed today in the office.  Postsurgical chances were noted at C5/C6 consistent with anterior cervical discectomy and fusion, as well as susceptibility artifact from the plate and screws.  At C/4/C5 a broad based central disc herniation was noted impinging on the thecal sac with mass effect upon the ventral aspect of the spinal cord." (Tr. 344).  In November 2013, after discussing results of an MRI and X-rays, Dr. Lee wrote "the traumatic disc herniation at C4/C5 has progressively worsened and now [Stimson] has symptoms related to this level with neck pain, as well as upper extremity pain and numbness…She will need to continue to restrict her activity level and alter her lifestyle in order to cope with the chronic pain caused by

the neck injury." (Tr. 342-43). In March 2015, Dr. Lee noted that there "appeared to be tension, alone with plate and screws at c5-c6 causing artifact. A central disc disruption was seen at c4-c5… [Stimson] also has a disc protrusion and annular tear at c4-c5 which may also be contributing to the neck pain, and was present following the trauma. We have discussed further diseconomy and fusion," and "[Stimson] requires assistance at home with household chores." (Tr. 447-448). As yet another example, Dr. Lee wrote the following treatment note on August 15, 2016:

> Ms. April Stimson is a 35-year-old woman who suffered injuries as an employee at McDonalds in July 2012 including neck and back injuries. She had a cervical discectomy and fusion procedure in April 2013. More recently, she had a coiling of the cerebral aneurysm at Beaumont Hospital in October 2015. She has a second cerebral aneurysm, which is being followed by Beaumont and she is being considered for a second coiling procedure. She has an implanted bladder stimulator. [ ]

(Tr.770-771).

In contrast to the ALJ's characterization of Dr. Lee's lack of detail, Dr. Lee then explains Stimson's ongoing, post-surgical problems in her back:

> Stimson benefited from cervical discectomy and fusion procedure. She has additional disc disruption at a more cephalad level. She continues to experience left arm pain consistent with radiculopathy possibly due to nerve root injury and battered nerve syndrome. She will have a myelogram followed by CT to try to ascertain the cause of her footdrop.

(Tr. 771).

Dr. Lee explained how "all of [Stimson's] medications"—meaning, the Norco, Neurontin, Opana, Topamax, and Nortriptyline—"make her fall asleep very easily. She will fall asleep either sitting or standing." (*Id.*). This explains and would seem to substantiate his opinion regarding Stimson's ability to focus or concentrate at work. Another example is Dr. Lee's treatment note from October 19, 2015: "[Stimson] is limping today. She has pain when she first gets up from seated," with 9/10 pain. (Tr. 436-37). Further, Dr. Lee wrote, "[Stimson] has multiple health issues to date, she is realistic about approaching them one at a time." (Tr. 437-38). Each of the above-mentioned treatment notes rebuts the ALJ's characterization of Dr. Lee's assessments as "generally vague," as well as his finding that Dr. Lee offered no "clear basis" for his opinions.

Although the ALJ labeled Dr. Lee's assessments "generally vague," it is the ALJ's discussion of those notes that lacked sufficient detail and analysis. The ALJ wrote that the "only specific limitations [Dr. Lee] gave [to Stimson] were offered shortly after [her] injury and prior to her surgery." (Tr. 22). The ALJ explained, Dr. Lee "was somewhat more specific shortly after the claimant's injury and before her surgery, when he indicated she could not use her arms overhead or lift greater than 10 pounds and needed to limit use of her right arm and hand at work. (Exhibit 5F, page 94)." (*Id.*). The ALJ's discussion is flawed. First, the ALJ did not clarify *which* of Stimson's multiple surgeries he was referencing. In fact, the ALJ failed to

meaningfully address treatment notes regarding Stimson's multiple surgeries and invasive procedures performed by Dr. Lee.  Stimson initially underwent "an anterior cervical discectomy and fusion procedure" in February 2013.  But, she also had multiple surgeries after that date, most of which were also performed by Dr. Lee. On August 26, 2014, Stimson underwent a surgery (performed by Dr. Lee) described in the Operative Report as "cervical epidural injection of steroid with fluoroscopy," under anesthesia.  (Tr. 377).  Stimson underwent another similar surgery, also performed by Dr. Lee, on September 1, 2015. (Tr. 456).  The September 2015 surgery, described as "caudal epidural injection of steroid and local anesthetic with fluoroscopy," involved the use of "Epimed catheter," as well as monitored anesthesia care.  (*Id.*).  Then, Stimson underwent coiling of cerebral aneurysm at Beaumont Hospital in October 2015.  (Tr. 770).  On May 24, 2016, Stimson underwent yet another surgery – again under monitored anesthesia – performed by Dr. Lee—a cervical epidural injection of steroid with fluoroscopy.  (Tr. 455). Stimson underwent yet another surgery on August 16, 2016, also performed by Dr. Lee.  (Tr. 768).  The ALJ's failure to address any of these additional surgeries and procedures in connection with the ALJ's evaluation of Dr. Lee's opinions calls into question the ALJ's overall analysis of those opinions.

Second, in contrast to the ALJ's assertion, Dr. Lee *did* give specific limitations to Stimson even *after* her (multiple) surgeries.  For example, on June 20, 2013—six

months after her cervical discectomy and fusion —Dr. Lee wrote that Stimson made progress after the cervical discectomy and fusion, returned to work, but "[t]he longer workdays up to eight hours have resulted in worsening of her condition including the onset of neck and back pain….[Stimson] should not have any overhead work or lifting greater than ten pounds.  She should also avoid turning to either side with quick movements of her head and neck… I provided [Stimson] with a list of restrictions…including lifting restrictions, as well as restrictions in terms of overhead work and other activities." (Tr. 349).  Dr. Lee also specifically explained that the February 2013 surgery did not entirely fix Stimson's medical issues, nor did it alleviate all of Stimson's pain.  On April 16, 2014, Dr. Lee wrote, "the shoulder and thoracic area did not seem to benefit from the surgery.  She remains limited in terms of her activity level.  She had difficulty attending an event at her daughter's school recently… She also appears to have a disc herniation at c4-c5 which may be contributing to the symptoms.  I suspect that she does have a shoulder injury and I recommended an evaluation by an orthopedic specialist." (Tr. 334-335).  Thus, even if Dr. Lee's limitations were, as the ALJ wrote, more specific prior to the surgery, that did not render them irrelevant thereafter.

The ALJ only provides three cites to Dr. Lee's treatment notes within the paragraph in which he discusses Dr. Lee's opinion, and only a few other times throughout the rest of his decision.  The ALJ mostly cited Dr. Lee's treatment notes

for the proposition that Dr. Lee "repeatedly indicated [Stimson] was disabled, unable to perform work activity, and needed to limit her activity level." (Tr. 22). But, on August 29, 2016—only five days after the hearing, which was held on August 24, 2016—Stimson submitted additional treatment notes that Dr. Lee had written during July and August of 2016. (Tr. 247). The ALJ only cites to these recent, detailed notes at the beginning of his decision, to support the following proposition: "Following the hearing, Mr. Deem submitted additional medical evidence, which was carefully reviewed and considered and added to the record." (Tr. 12). Nowhere else are these notes mentioned, let alone discussed. Moreover, these notes include a summary of Stimson's most recent lumbar injection, performed by Dr. Lee on August 18, 2018, and her postoperative diagnoses from that date (Tr. 768); details about Stimson's pain rising to the level of 10/10, her recent fall, second cerebral aneurysm, and medication side effects (Tr. 770-71); analysis of a CT scan from July 2016 showing "mild disc bulging and ligamentum flavum hypertrophy," as well as recently reported blurry vision potentially resulting from Stimson's second aneurysm, possibly requiring a second surgical coiling procedure (Tr. 771-73).

Next, the ALJ stated that "Dr. Lee's clinical notes generally discussed objective medical findings only minimally." (Tr. 22). This finding, however, is not supported by substantial evidence. Dr. Lee frequently and thoroughly discussed and analyzed objective medical findings in many of his clinical notes. Dr. Lee repeatedly

ordered, referred, or requested multiple objective medical tests, including MRIs, EMGs, X-rays, and a nerve conduction study.  (*E.g.*, Tr. 363, 364, 365, 366, 367, 368, 369, 375, 376, 435). He reviewed or discussed MRI results in his treatment notes from the following dates: November 25, 2013 (Tr. 342); April 16, 2014 (Tr. 334); October 13, 2014 (Tr. 327); October 20, 2014 (Tr. 326); September 14, 2014 (Tr. 329); January 26, 2015 (Tr. 451); February 16, 2015 (Tr. 448-49); and March 16, 2015 (Tr. 447-48).  The following treatment notes also include Dr. Lee's review of objective medical testing: on August 3, 2015, Dr. Lee references an EEG (Tr. 440); on September 21, 2015, Dr. Lee wrote that, although an EMG and nerve conduction study of the upper and lower extremities was normal, "An arteriogram of the brain…showed a right superior hypophyseal artery aneurysms, as well as a right anterior choroidal artery aneurysm." (Tr. 435); on July 18, 2016, Dr. Lee wrote that he reviewed a CT of Stimson's lumbar spine, and "there appeared to be mild disc bulging and ligamentum flavum hypertrophy at L3-L4 and L4-L5."  (Tr. 773).

In Dr. Lee's treatment notes from March 16, 2015, after reviewing a postoperative study involving an MRI scan, he writes, "[t]here appeared to be tension…at c5-c6 causing artifact.  A central disc disruption was seen at c4-c5… she also has a disc protrusion and annular tear at c4-c5 which may also be contributing to the neck pain."  (Tr. 447-448).  This evidences Dr. Lee's incorporation of objective medical testing, in the form of an MRI scan, into his analysis of Stimson's

worsening symptoms and pain, which contradicts the ALJ's broad assertion to the contrary.

As another example, Dr. Lee's treatment notes from February 16, 2015 state, "She has a smaller disc herniation evident at c4-c5 which was present on the post injury cervical spine MRI scan which may be the cause of the current symptoms. We have considered additional surgery including fusion at the C4-C5 level.  I would like to proceed with another cervical spine MRI scan to assess if there have been any changes in the past one to two years."  (Tr. 448-449).  The same treatment notes further indicate a "disc protrusion at 14-15 asymmetric to the left."  (*Id.*).  Dr. Lee's treatment notes from July 18, 2016 indicate a CT of the lumbar spine was performed on July 2, 2016 at Huron Valley Hospital.  He wrote, per the results of the CT, "there appeared to be mild disc bulging and ligamentum flavum hypertrophy at L3-L4 and L4-L5."  (Tr. 772-73).  Finally, Dr. Lee specified in August 2016 (the same month as the hearing) "[Stimson] is unable to have an MRI because she has a bladder stimulator."  (Tr. 771).

The ALJ also failed to provide good reasons for giving Dr. Lee's opinions little weight because he did not assert that they were contradicted by the record, nor did he identify the substantial evidence that supports his decision.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (determining that the ALJ failed to provide good reasons, in part, because the ALJ "does not identify the

substantial evidence that is purportedly inconsistent" with the treating physician's opinion).  In her summary judgment motion, the Commissioner argues that "the ALJ properly found that Dr. Lee's medical records [] did not support his opinions," and then provides a list of record evidence that allegedly contradicts Dr. Lee's findings and recommendations regarding Stimson's physical capacities.  (Doc. #14 at 11-15).  But the Commissioner's argument is incorrect.  As shown above, *supra* at 13-14, the ALJ never asserted that Dr. Lee's medical records did not support his opinions.  Nor did the ALJ compare the referenced evidence against Dr. Lee's opinions.  In short, the court declines to uphold the ALJ's decision on the basis argued by the Commissioner, as the Commissioner's "post hoc rationalization at this stage is insufficient."  *Beckrow v. Commissioner of Soc. Sec.*, 2012 WL 1564669, at *12 (E.D. Mich. Apr. 12, 2012) (internal quotations omitted).  *See also Allen v. Berryhill*, 273 F. Supp. 3d 763, 774 (M.D. Tenn., 2017) (quoting *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993)) (The Court "'may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'").

In sum, while the Court recognizes that Dr. Lee's opinions that Stimson was disabled or could not work full-time are opinions reserved to the Commissioner "and are thus not medical opinions that can be given controlling weight," (Doc. #14 at 10)

(citing 20 C.F.R. §404.1527), at least some of Dr. Lee's opinions do not fall into that category, and the ALJ always has an obligation to properly follow the treating physician rule.  Indeed, the Sixth Circuit "has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue, supra* at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)); *Gayheart*, 710 F.3d at 377.  In this case, for the reasons stated above, the ALJ has not provided good reasons for giving Dr. Lee's opinion "some" weight and such a procedural error is not harmless, regardless of whether a different outcome on remand is likely.  *Wilson*, 378 F.3d at 546.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is not supported by substantial evidence, and that remand is appropriate.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment (Doc. #14) be DENIED, Stimson's Motion for Summary Judgment (Doc. #13) be GRANTED IN PART to the extent it seeks remand, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be

REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: November 21, 2018                     s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge
                                             Sitting by Special Designation

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.